**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| STEPHANIE DIAL, | : | |
| Claimant, | : | |
| v. | : | CASE NO. 4:09-CV-150- CDL-MSH |
| | : | Social Security Appeal |
| MICHAEL ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for supplemental security income, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court's role in reviewing claims brought under the Social Security Act

is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973) (per curiam). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 *et seq.*

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520, app. 1, pt. 404. First, the Commissioner determines whether the claimant is working. If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

I.  **Is the ALJ's determination regarding Claimant's RFC supported by substantial evidence?**

II. **Did the ALJ meet his burden of establishing that there is "other work" Claimant can perform?**

## Administrative Proceedings

Claimant protectively filed for Supplemental Security Income benefits on May 18, 2006. (Tr. 52, 53.) Claimant alleged a disability onset date of February 1, 2003, due to affective mood disorders and personality disorders including bi-polar disorder, obsessive compulsive disorder, anxiety, panic attacks, and schizophrenia. (Tr. 52, 53, 90-92, 101.) Her applications were denied initially and upon reconsideration. (Tr. 54-57, 60-63.) Claimant timely filed a request for a hearing, and on April 16, 2009, a hearing was held. (Tr.18-51.) On July 14, 2009, the ALJ entered an unfavorable ruling (Tr. 6-17), and the Appeals Council subsequently denied Claimant's request for review (Tr. 1-3). This appeal followed.

## Statement of Facts and Evidence

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since May 18, 2006. (Tr. 11.) The ALJ also concluded that Claimant had the severe impairments of affective mood disorder, personality disorder, and bipolar disorder, but that these impairments—or any combination of her impairments—did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11-12.) The ALJ next found that Claimant had the residual functional capacity ("RFC") to perform sedentary work, except that the Claimant would be limited to unskilled work activity which does not require interacting with the general public. (Tr. 12-15.) The ALJ determined that Claimant was a younger individual, with at least a high school education, who could communicate in English. (Tr. 16.) Since Claimant had no past relevant work, the ALJ

determined that transferability of job skills was not an issue. (*Id*.) Considering the Claimant's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Claimant could perform. (Tr. 16.) Thus, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act. (Tr. 16.)

## DISCUSSION

I.  **Is the ALJ's determination regarding Claimant's RFC supported by substantial evidence?**

Claimant first asserts that the ALJ erred in making an assessment of her residual functional capacity ("RFC") which, Claimant alleges, is incomplete, unexplained, and not based on the evidence appearing in the record as a whole. (R. 12 at 9.) Specifically, she asserts that in reaching his determination of her mental RFC, the ALJ failed to evaluate all of the limitations which she claims were imposed on her by the experts and ignored her inability to deal with stress and the side effects of her medications. (R. 12 at 9, 12-16.) Therefore, Claimant alleges, the decision by the ALJ that Claimant is capable of performing other work is not supported by substantial evidence. Claimant makes four particular assertions of error by the ALJ in reference to his findings concerning the RFC: (1) the ALJ erred in evaluating the Claimant's mental limitations; (2) the ALJ erred in assessing Claimant's social limitations; (3) the ALJ erred by ignoring Claimant's inability to deal with stress; and (4) the ALJ erred by ignoring the side-effects of Claimant's medication. (R. 12 at 9, 12, 14, 15.) These assertions of error are addressed together as they all go to the

5

question of whether the ALJ's decision is supported by substantial evidence.

The ALJ found that Claimant had a history of mood disorders and self-reported psychological problems since age 14. (Tr. 13.) This was confirmed by Claimant's mother. (*Id.*) The ALJ also found that, according to the medical records, around age fourteen, Claimant was diagnosed with bipolar disorder. (*Id.*) In August 2005, Claimant began treatment with Dr. Jennifer Morris in Bethany, Oklahoma, for mood swings, anxiety, depression and irritability. (*Id.*) Dr. Morris diagnosed Claimant with bipolar II disorder and prescribed anti-depressant medication. (*Id.*)

In 2006, Claimant's continuing complaints of anxiety caused her to obtain mental health counseling through the Pastoral Institute in Columbus, Georgia, where her therapist found that her complained-of stress and anxiety were the result of her overreaction to criticism. (Tr. 13.) This same therapist reported in March 2006 that Claimant had a good rapport and above average intellect and psychological insight. (Tr. 187; Ex. 3F at 5.) Additionally, the Pastoral Institute therapist reported that Claimant presented in a calm, cooperative and well groomed manner with both thought processes and content intact. (*Id.*)

On August 31, 2006, Claimant was taken to West Central Georgia Regional Hospital on referral from New Horizons Community Service Board after a "crisis with her parents." (Tr. 194.) Although the parents expressed concern about her self-inflicting injury or suicide, Claimant denied any such ideations and requested discharge. The clinician found her to be well-oriented, though uncooperative, and further found her thought processes to be logical and coherent and without any loose association or aberration. (Tr. 195.) The previous

diagnosis by Dr. Morris of bipolar II disorder was expanded to include depression and lack of impulse control. (Tr. 196.) Claimant continued as a patient at New Horizons and was also treated by private practice physician, Dr. Christopher Wommack, because, according to Claimant's mother, Claimant was enrolled in school full time and was covered on the parents' health care insurance. (Tr. 44.) Claimant underwent a consultative psychological examination with Dr. Lewis Lieberman on October 17, 2006, as part of her pursuit of supplemental security income benefits. Dr. Lieberman opined that Claimant had a personality disorder, but questioned whether Claimant was bipolar or had anixety and wondered "to what extent [Claimant's] symptoms are the result of suggestion and expectation." (Tr. 206, 207.) Dr. Lieberman specifically found Claimant to be "intelligent" and reported that "she can be effective in a job[.]" (Tr. 206.)

In clinical presentations of February 19 and March 18, 2008, Claimant self-reported as doing well (Tr. 45) and expressed a desire to reduce her medications. Dr. Wommack referred Claimant to Dr. Ramesh Kannegenti who diagnosed Claimant as having bipolar affective disorder, panic disorder and obsessive-compulsive disorder with a Global Assessment of Functioning of 65-70, but doing well on Paxil and Klonopin. (Tr. 15.)

At the time the original decision to deny benefits was made in Claimant's case, she was 19 years old and had a high school education. The hearing on appeal was conducted by the ALJ on April 16, 2009. (Tr. 18.) The hearing transcript shows that Claimant had previously been employed at a Japanese restaurant as a waitress, a waitress/order clerk at a restaurant which included take-out service, at Chick-fil-A as a service worker, and at a video

7

store as a clerk. (Tr. 21.) She enrolled in Georgia Military College in January 2009 and began taking three classes—political science, remedial mathematics, and English. (Tr. 41.) According to her mother, who Claimant described under oath as "very truthful" and "very honest," (Tr. 38) Claimant's day consisted of leaving home at 9:00 a.m. and attending college until she returned at 2:00 p.m. (Tr. 41, 42.) Upon returning home, she spent time "studying and crying about studying[.]" (Tr. 42.) Despite her apparent anxiety associated with studying, however, Claimant earned an A in mathematics. (Tr. 42.) She dropped Georgia Political Science because, according to her mother, she was "terrified of the subject." (Tr. 43.)

At the hearing before the ALJ, Claimant denied that she was Stephanie Nicole Dial. She testified that she is a being from "another dimension" (Tr. 24-25) which she identified as a wandering spirit named "Echigo" and purported to address the ALJ in the language used in the alternative dimension. (Tr. 25.) When asked to write the words used onto paper, Claimant testified that she "could but I would probably be persecuted by the people from my dimension because we're not supposed to teach and/or share the language." (Tr. 26.) She described herself as a "vessel" of Echigo since December 4, 2006, and further claimed to have had at that time six distinct personalities—although only one, a little girl, remained in the "vessel" after the various personalities fought for the "vessel" or waited in line. (Tr. 22-24.)

When asked about her ability to work, Claimant testified that "it's very complicated because I don't understand the normal ways of functioning here" (Tr. 24), referring to her

8

prior assertion that she was Echigo and from another dimension. (Tr. 25.) When asked about specific problems in her past work, she testified that while employed at Chick-fil-A, she felt what she described as "this huge pressure on me because there's this deadline" after receiving the customer's order. (Tr. 26.) She recalled specifically that this made her "break down" or "melt down" (Tr. 26) and caused her to conclude that her coworkers were attempting to shirk their responsibilities and place all of the work burden on her. (Tr. 26.)

Claimant denied she was human (Tr. 27), but recited the prescribed course of medications she had taken or was currently taking. (Tr. 28.) She expressed happiness in writing, drawing and "being creative" (Tr. 33) and recounted daily activities of life including working on the computer, cleaning house and cooking. Claimant drives daily and denied any disorder except anxiety. (Tr. 38-39.) Her stress and anxiety is reduced, according to her testimony, when she does not have to work or attend school (Tr. 39) and her decision to stop work caused her to "feel extremely relieved" although she later suffered from remorse as a result of her choice to quit. (Tr. 39.) Claimant's mother testified that "anytime [Claimant] has increased activity she has increased anxiety" and confirmed that Claimant enjoys drawing, watching television and playing with animals but school attendance creates stress and makes her cry. (Tr. 40-41.) Claimant's mother also testified that "panic attacks" were the primary problem for which Claimant was treated and medicated. (Tr. 49.)

The ALJ determined that Claimant suffers from the severe impairments of affective mood disorder, personality disorder and bipolar disorder, 20 C.F.R. § 416.920, and further found that the impairments impose more than a minimal limitation on her ability to carry out

basic functions of work. (Tr. 11.) The ALJ further found that Claimant's mental impairments, neither singly nor in combination, met nor medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and found mild restrictions in activities of daily life and moderate difficulties as to social functioning, concentration, persistence and pace. (Tr. 11-12.) The ALJ found that Claimant had experienced one to two episodes of decompensation of extended duration and that although there were resulting hospitalizations, Claimant improved on medication. In his Step 3 findings, the ALJ found that Claimant has the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967a with a limitation to unskilled work activity not interacting with the general public. (Tr. 12-15.) Because Claimant has no past relevant work in the opinion of the ALJ, he concluded his findings by determining that jobs exist in the national economy in significant numbers which Claimant can perform (20 C.F.R. §§ 416.969 and 416.969a) within her RFC by applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart B, Appendix 2.

A review of the findings made by the ALJ clearly demonstrate that there was full consideration of the evidence developed in the record as a whole and each of the asserted errors is without merit. The limitations found by the ALJ are consistent with the limitations as a result of the mental impairments determined to be present in Claimant by the various care providers who treated and examined Claimant. The two primary impairments found to be present in Claimant, stress and anxiety, were consistently treated with good and prompt results and although there was some inconsistent complaint by Claimant that medication made her sleepy, the longitudinal record here is extensive given her age. No evidence

indicates that the side effects of the medication impaired or interfered with Claimant's daily activities such as college, computer use, drawing or household and pet care. The sporadic and intermittent mention of drowsiness to the various health care providers and consultants is not sufficient evidence to require the ALJ to include restrictions as to medication side effects in his RFC. *See Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir. 1990) (explaining that the mere assertion of a side effect by the claimant, without supporting evidence of concerns regarding side effects by treating doctors, does not require the ALJ to include side effect restrictions in a RFC).

The ALJ properly weighed the extensive report prepared by Dr Lewis Lieberman, a clinical psychologist who interviewed Claimant and opined that she is alert, well oriented, coherent and relevant. (Tr. 205.) Schizophrenia was ruled out and Lieberman considered her to be of above average intelligence and well in touch with reality though excessively sensitive to criticism. The ALJ specifically addressed the hypersensitivity to criticism exhibited by Claimant as found by Lieberman and determined that Claimant had moderate difficulties in social functioning. (Tr. 12.) State agency medical experts Dr. David Williams and Dr. William Gore provided opinions consistent with the opinions of Lieberman and the treating physicians, but found her credibility compromised (Tr. 242) since there was an apparent inconsistency between the medical record and the severity and duration of the reported limitations. When addressing whether Claimant had disabling mental limitations, both State agency psychological consultants found Claimant to have the ability to perform simple tasks and follow one-two step instructions. (Tr. 15.) In reaching his determination

of Claimant's RFC, the ALJ included a limitation on unskilled work with restrictions on interaction with the public, fully accommodating both the social and mental limitations, such as they were found to be. Though Claimant argues that a physically healthy 22 year old high school graduate who attends college, drives, writes and draws creatively, uses a computer, maintains a household, cares for pets (all on a on a daily basis) and has worked in the past is disabled, the decision by the ALJ is based on substantial evidence in the record considered as a whole, addresses each of the particular assertions of error raised by the Claimant in her brief, and should be affirmed.

## II. Did the ALJ meet his burden of establishing that there is "other work" Claimant can perform?

In her second asserted error, Claimant contends that the Commissioner did not meet his burden of establishing in the record that there exist other jobs available in significant numbers in the national economy which Claimant can perform. Specifically she asserts as error the application of the Medical-Vocational Guidelines at Step 5 of the sequential evaluation by the ALJ without vocational expert testimony to demonstrate that Claimant can, in fact, perform other jobs. Claimant has nonexertional limitations. However, "nonexertional limitations can cause [medical-vocational guidelines] to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level." *Murray v. Heckler*, 737 F.2d 934, 935 (11th Cir. 1984). In *Syrock v. Heckler*, 764 F.2d 834 (11th Cir. 1985), the Eleventh Circuit reaffirmed *Murray* and held that the Medical-Vocational Guidelines could be applied without added testimony by a vocational

expert when the ALJ made a specific finding that nonexertional limitations are not severe enough to preclude a wide range of employment at a given capacity level. 764 F.2d at 836. The ALJ here found specifically that the additional nonexertional limitations imposed on Claimant had little or no effect on the occupational base of unskilled sedentary work. (Tr. 16.) Thus, the level of work that the Claimant can do is not, in the findings of the ALJ, significantly affected by her nonexertional limitations. Since here the ALJ made the specific finding that Claimant's nonexertional limitations were not severe enough to preclude a wide range of employment at her given capacity level, the testimony of a vocational expert was unnecessary.

Furthermore, the findings of fact and determination as to disability made by the Commissioner are conclusive if supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). If there is substantial evidence in the record to support the Commissioner's findings they must be upheld. *See generally Graham v. Bowen,* 790 F.2d 1572 (11th Cir. 1986); *Walden v. Schweiker,* 672 F.2d 835 (11th Cir. 1982). The findings of the ALJ here were supported by substantial evidence. Claimant has failed to establish her disability to work and the decision of the Commissioner should be affirmed.

## CONCLUSION

WHEREFORE, it is the recommendation to the United States District Judge that this case be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

expert when the ALJ made a specific finding that nonexertional limitations are not severe enough to preclude a wide range of employment at a given capacity level. 764 F.2d at 836. The ALJ here found specifically that the additional nonexertional limitations imposed on Claimant had little or no effect on the occupational base of unskilled sedentary work. (Tr. 16.) Thus, the level of work that the Claimant can do is not, in the findings of the ALJ, significantly affected by her nonexertional limitations. Since here the ALJ made the specific finding that Claimant's nonexertional limitations were not severe enough to preclude a wide range of employment at her given capacity level, the testimony of a vocational expert was unnecessary.

Furthermore, the findings of fact and determination as to disability made by the Commissioner are conclusive if supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). If there is substantial evidence in the record to support the Commissioner's findings they must be upheld. *See generally Graham v. Bowen,* 790 F.2d 1572 (11th Cir. 1986); *Walden v. Schweiker,* 672 F.2d 835 (11th Cir. 1982). The findings of the ALJ here were supported by substantial evidence. Claimant has failed to establish her disability to work and the decision of the Commissioner should be affirmed.

## CONCLUSION

WHEREFORE, it is the recommendation to the United States District Judge that this case be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

THIS the 2nd day of November, 2010.

                                                        S/Stephen Hyles
                                                       UNITED STATES MAGISTRATE JUDGE